# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

JOE STANLEY BROWN,                          :

      Petitioner,                       :

                                         Case No.  3:04CV192

vs.                                         :

                                         District Judge Walter Herbert Rice

ANTHONY J. BRIGANO,[1] Warden,              :   Magistrate Judge Sharon L. Ovington
Lebanon Correctional Institution,

                                            :

      Respondent.                       :

                                            :

---

# REPORT AND RECOMMENDATIONS[2]

---

## I.   INTRODUCTION

Early one morning in April 2001, Joe Stanley Brown entered Jennifer Johnson's bedroom and hit her in the side of her face with a metal pipe.  Brown was very angry with Johnson because she had filed a domestic violence complaint that led to the arrest of one of Brown's lifelong friends.  In addition to hitting Johnson with a metal pipe, Brown forced her to remain in the bedroom while he threatened her with further violence and death, and threatened to harm her family, if she continued to pursue the criminal complaint against his friend.  Nearly two hours after the ordeal began, Brown left Johnson alone without further physical violence.

It later turned out that Brown's attack and threats were unnecessary – even from his

---

[1]  When filed this case, Anthony J. Brigano was the Warden of the Lebanon Correctional Institution (LCI). Ernie Moore is the current Warden of LCI.  *See* www.drc.state.oh.us.  To maintain clerical continuity, the caption of the case should remain the same.

[2]  Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendations.

perspective – because the day before the attack, Johnson had already decided not to pursue her

domestic violence complaint against Brown's friend.  Necessity aside, the attack and threats

were criminal, and Brown was consequently indicted in state court on several criminal charges.

During the ensuing jury trial in the Montgomery County, Ohio Court of Common Pleas,

Brown's defense essentially asserted that he did not attack or threaten Johnson.  *See, e.g.,* Doc.

#4, Exhibit 30 at pp. 516-56.  A jury concluded otherwise, finding Brown guilty of three crimes:

felonious assault, a second degree felony; kidnapping, a first degree felony; and intimidation of a

crime witness or victim, a third degree felony.[3]  (Doc. #4, Exh. 5).  The trial judge sentenced

Brown to concurrent terms of imprisonment totaling ten years.  *Id*.

Having unsuccessfully challenged his convictions in the Ohio courts, Brown now turns to

federal court seeking a writ of habeas corpus under 28 U.S.C. §2254.  The case is presently

before the Court on Brown's Petition (Doc. #1), Respondent's Answer/Return Of Writ (Doc. #4),

Brown's Traverse (Doc. #5), and the record as a whole.

## II.    BACKGROUND

The Ohio Court of Appeals detailed the events that formed the basis of Brown's

convictions as follows:

> The evidence presented by the State demonstrates that Jennifer Johnson
> and her boyfriend, Marty Newberry, lived together at 241 S. Westview in Dayton.
> During the last weekend in March 2001, Newberry repeatedly engaged in acts of
> domestic violence against Johnson.  On Sunday, April 1, 2001, Johnson called
> police and reported the domestic violence.  Newberry was arrested that day
> pursuant to the domestic violence complaint Johnson filed.  That evening
> Newberry posted bond and was released.  Pursuant to the terms of the bond,

---

[3]  The jury found Brown not guilty of one charge – disrupting public services.  (Doc. #4, Exh. 1 at ¶42 and
Exh. 30 (Trial Tr. at p. 612)).

2

Newberry was not permitted to return to the Westview residence until after his arraignment.  On ... April 2, 2001, both Newberry and Johnson appeared in court for Newberry's arraignment.  The case did not go forward, however, and Newberry was ordered to return to court the following day, April 3, 2001.

On the morning of April 3, 2001, at around 6:00 a.m., Johnson was home in bed when she awoke to find Defendant Joe Brown standing in the bedroom doorway.  Defendant was very angry with Johnson because Defendant's life-long friend, Newberry, had been arrested for domestic violence.  When Johnson asked Defendant to leave, he struck her on the left cheek with a metal pipe.  Johnson temporarily lost her vision, and she thought her cheekbone was fractured. Johnson experienced great pain in her face.

For the next two hours Defendant refused to allow Johnson to leave the bedroom.  Defendant repeatedly shook the metal pipe in Johnson's face and threatened to harm Johnson, to have her raped and killed by three men, if she pursued the charges against Newberry or called police on Defendant.

At approximately 7:50 a.m., Defendant's pager went off.  A few minutes later, at 7:58 a.m., Defendant left the residence taking the cord from the telephone with him.  As Defendant left, Johnson heard the metal pipe hit the concrete foundation of the house hear [sic, presumably, "near"] her bedroom window.

After Defendant left, Johnson found another phone cord and she called her friend, Susan Mullikin, who came to Johnson's apartment.  Mullikin urged Johnson to call police, but Johnson was too frightened by Defendant's threats to do so.  Johnson refused to go to the hospital because she had no insurance.

Johnson and Mullikin retrieved the metal pipe and went to Mullikin's house, where Johnson stayed and drank beer while Mullikin was at work.  By the time Mullikin returned home, Johnson had decided to report the incident to police.  Mullikin took Johnson to the police station at about 4:40 p.m.  Johnson told police what had happened and gave them the metal pipe.  Defendant was located and arrested at around 5:00 p.m. on April 3, 2001.  A subsequent search of Defendant's vehicle turned up a pair of rubber gloves Johnson said Defendant wore during the assault.

(Doc. #4, Exh. 1 at pp. 1-2); *State of Ohio v. Brown* 2002 WL 31641092 at p. *1 (Ohio App.

2002).

3

### III.    BROWN'S CLAIMS AND THE AEDPA

Brown's federal habeas Petition raises eight Grounds for Relief, which, when construed in his favor, set forth three constitutional claims that must be addressed on the merits:

1.     The trial court's denial of his Motion to Suppress violated his rights under the Fifth and Fourteenth Amendments to the Constitution;

2.     His conviction on one count of intimidating a crime witness or victim was not supported by sufficient evidence in violation of his rights under the Fourteenth Amendment; and

3.     His trial counsel provided ineffective assistance in violation of his rights under the Sixth and Fourteenth Amendments.

*See* Doc. #1 (First, Second, Fourth, and Sixth Grounds for Relief).  As will be seen, the remaining Grounds for Relief in Brown's Petition are either not cognizable in federal habeas review or waived due to procedural default.

Brown's habeas Petition is subject to review under the standards set by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"),[4] because he filed his Petition well after the AEDPA's effective date.  *See Barker v. Yukins*, 199 F.3d 867, 871 (6th Cir. 1999).  The parties do not dispute this.  *See* Doc. #4 at pp. 18-23; Doc. #5 at p. 4

What, then, does the AEDPA require?

### IV.    HABEAS CORPUS AND THE AEDPA

The proper scope of federal habeas corpus relief was vigorously debated in this country throughout the twentieth century.  *Cf. Wright v. West*, 505 U.S. 277, 285-90 (1992)(discussing the historical development of the Court's habeas decisions).  And the debate will doubtlessly

---

[4]  *See* AEDPA, Pub.L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996).

continue through this century, *see, e.g., Hamdi v. Rumsfeld*, 542 U.S. 407 (2004), because "the availability of federal habeas corpus relief is an enormously controversial and political issue." *Staley v. Jones* 239 F.3d 769, 776 (6th Cir. 2001).

Congress' most significant recent effort to refine the scope of federal habeas review of state criminal convictions emerged in the AEDPA, through which Congress sought "to curb delays, to prevent 'retrials' on federal habeas, and to give effect to state convictions to the extent possible under law. When federal courts are able to fulfill these goals within the bounds of the law, AEDPA instructs them to do so." *Williams v. Taylor,* 529 U.S. 362, 386 (2000)(opinion of Stevens, J.). The AEDPA mandates "heightened respect for state court factual and legal determinations,'" *Fulcher v. Motley*, 444 F.3d 791, 824 (6th Cir. 2006)(citation omitted), or more colloquially, "tells federal courts: Hands off, unless the judgment in place is based on an error grave enough to be called unreasonable." *Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998)(citation and internal punctuation omitted).

Under the AEDPA, codified in part at 28 U.S.C. §2254(d), "a petitioner is not entitled to relief in a federal habeas corpus proceeding unless the state court's adjudication of his or her ... claim resulted in a decision that ... was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court...." *Arnett v. Jackson*, 393 F.3d 681, 685 (6th Cir. 2005).

"The first line of analysis under AEDPA involves the consistency of the state-court decision with existing federal law. A state-court decision is considered 'contrary to ... clearly established Federal law' if it is 'diametrically different, opposite in character or nature, or mutually opposed,'" *Nields v. Bradshaw*, 482 F.3d 442, ___ (6th Cir. 2007) (quoting in part

*Williams v. Taylor,* 529 U.S. 362, 405, (2000)), or "if the state court decides a case differently than [the Supreme Court] on a set of materially indistinguishable facts." *Fulcher v. Motley*, 444 F.3d 791, 824 (6th Cir. 2006). "Alternatively, to be found an 'unreasonable application of ... clearly established Federal law,' the state-court decision must be 'objectively unreasonable' and not simply erroneous or incorrect." *Nields*, 482 F.3d 442, ___ (quoting in part *Williams*, 529 U.S. at 409-11).

The second line of AEDPA analysis concerns a convicted defendant's challenges to a state court's factual findings. Again, "a high degree of deference" applies under the AEDPA. *Nields*, 482 F.3d 442, ___. "A federal court is to apply a presumption of correctness to state court findings of fact for habeas corpus purposes unless clear and convincing evidence is offered to rebut this presumption." *James v. Brigano*, 470 F.3d 636, 643 (6th Cir. 2006).

## V.    BROWN'S FIFTH AMENDMENT CLAIM

Brown's challenge, in his First Ground for Relief, to the trial court's denial of his Motion to Suppress raises a claim under the Fifth Amendment to the Constitution. *See Miranda v. Arizona,* 384 U.S. 436, 467, 471-72 (1966). In support of this claim, Brown contends that he "could not read or write and did not knowingly, voluntarily, and intelligently waive his right to be silent after his arrest." (Doc. #1). Brown also contends that his interrogator deceived him into believing police were investigating a burglary of Jennifer Johnson's house, which (according to Brown) was different than Newberry's residence where Johnson alleged she was attacked. *Id*.; *see* Doc. #5 at p.4. Brown explains that if he had known police were investigating Johnson's complaint about an attack upon her at Newberry's residence, he would not have agreed to the police interrogation.

6

Respondent acknowledges that Brown's claim arises under the Fifth Amendment to the Constitution.  (Doc. #4 at p. 23).  Respondent then asserts that Brown also raises a Fourth Amendment claim to the validity of a certain search warrant.  *Id*.  Lumping both constitutional claims together, *id*., at pp. 23-25, Respondent contends, "[p]ursuant to *Stone v. Powell*[, 428 U.S. 465 (1976)] this claim is noncognizable and does not warrant relief in federal habeas."  (Doc. #4, p. 25).

Respondent is correct to the extent that Brown seeks to challenge the trial court's denial of his Motion to Suppress under the Fourth Amendment, since *Stone v. Powell* renders such claims non-cognizable in federal habeas cases, and since the trial court provided Brown with a full and fair opportunity to raise his Fourth Amendment claim.  *See* Doc. #4, Exhs. 3-4; *see also Stone*, 428 U.S. at 494-95; *Seymour v. Walker*, 224 F.3d 542, 553 (6th Cir. 2000).

Respondent, however, overlooks two things:  (1) Brown's Fifth Amendment claim is not subject to the rule of *Stone v. Powell*, *see Withrow v. Williams*, 507 U.S. 680, 691 (1993); and (2) Brown's First Ground for Relief, as illuminated by his supporting facts and Traverse, only describes facts pertinent to a Fifth Amendment challenge to his interrogation by police.  *See* Doc. #1; Doc. #5 at pp. 4-5.

The Fifth Amendment guarantees that "no person ... shall be compelled in any criminal case to be a witness against himself...."  These Fifth Amendment "*Miranda*" rights arise during in-custody police interrogations and encompass the right to remain silent and the right to have counsel present during police interrogations.  *See Miranda* 384 U.S. at 467, 471-72.  A criminal suspect may waive these rights, but must do so "knowingly, voluntarily, and intelligently...."  *Machacek v. Hofbauer*, 213 F.3d 947, 954 (6th Cir. 2000) (citation  omitted).

7

Fifth Amendment concern; *see also*; *Miranda v. Arizona*, 384 U.S. 436 (1966).

The analysis of Brown's Fifth Amendment claim thus requires an AEDPA-controlled review of the Ohio Court of Appeals' decision rejecting Brown's Fifth Amendment claim. *E.g., Yarborough v. Alvarado,* 541 U.S. 652, 124 (2004) (applying AEDPA to state court's resolution of "in custody" issue under *Miranda*); *McCalvin v. Yukins*, 444 F.3d 713, 718-21 ( 6ᵗʰ Cir. 2006) (applying AEDPA to state court's resolution of "voluntariness" issue under *Miranda*).

The Ohio Court of Appeals' decision correctly set forth the legal standards applicable to Brown's Fifth Amendment claim under three Supreme Court cases: *Miranda*; *Colorado v. Spring*, 479 U.S. 546 (1987); and *Moran v. Burbine*, 475 U.S. 412 (1986). *See* Doc. #4, Exh. 1 at ¶12. As a result, the Ohio Court of Appeals' decision was not diametrically opposed or "contrary to" federal law as determined by the Supreme Court. *See Nields*, 482 F.3d 442, ___.

The inquiry thus turns to whether the Ohio Court of Appeals' decision involved an objectively unreasonable application of these Fifth Amendment standards. *See Nields*, 482 F.3d 442, ___. It did not.

The Ohio Court of Appeals' decision fully considered whether Brown's inability to read or write deprived him of the ability to knowingly and intelligently waive his Fifth Amendment Rights. The appellate Court reasoned as follows:

> Low intellectual capacity alone, does not demonstrate that defendant lacks the ability to comprehend and validly waive his *Miranda* rights.... The totality of the circumstances must be considered. The facts and circumstances in this case demonstrate Defendant was orally advised of all of his rights, including his right to have an attorney present during questioning and his right to stop answering questions at any time, and that Defendant stated that he understood each and every one. In their totality, the facts and circumstances do not support Defendant's claim.

(Doc. #4, Exh. 1 at ¶17).

This did not constitute an unreasonable application of federal law as decided by the Supreme Court.  Consistent with Brown's contentions, his inability to read or write was doubtlessly a proper factor to consider when resolving the validity of his waiver.  *Colorado v. Connelly*, 479 U.S. 157, 165 (1986) ("While mental condition is surely relevant to an individual's susceptibility to police coercion, mere examination of the confessant's state of mind can never conclude the due process inquiry.").  Brown's argument, however, does not recognize that the Ohio Court of Appeals correctly considered his inability to read and write as part of the totality of the circumstances he faced during police interrogation.  *See* Doc. #4, Exh. 1 at ¶17.  This aspect of the Court of Appeals' decision fully comported with the Supreme Court's totality-of-circumstances test, and its inclusion of many additional factors to consider, such as (1) police coercion; (2) length of interrogation; (3) location of interrogation; (4) continuity of interrogation; (5) the suspect's maturity; (6) the suspect's education; (7) the suspect's physical condition and mental health; and (8) whether the suspect was advised of *Miranda* rights. *See Withrow v. Williams,* 507 U.S. 680, 693-94 (1993); *see also Colorado v. Connelly*, 479 U.S. 157, 165 (1986) ("While mental condition is surely relevant to an individual's susceptibility to police coercion, mere examination of the confessant's state of mind can never conclude the due process inquiry.).  Because the Ohio Court of Appeals examined the totality of the circumstances Brown faced during his interrogation by considering his inability to read and write along with other applicable factors, its Decision met the requirements of, and was not objectively unreasonable application of, Supreme Court case law.  *Cf. Clark v. Mitchell* 425 F.3d 270, 283 (6th Cir. 2005)(citing federal cases where Courts of Appeals "have found several instances where defendants, despite their mental retardation or low I.Q.'s, were found to have waived their rights knowingly and

intelligently.").

The Ohio Court of Appeals similarly rejected Brown's contention that his waiver of rights was not knowing, intelligent, and voluntary because Detective Tackett (the interrogating detective) deceived him. The Ohio Court of Appeals recognized, in part, that Brown "testified at the suppression hearing that he knew Det. Tackett was asking him about a burglary, abduction, and kidnapping involving Jennifer Johnson. Defendant was well aware that the residence Det. Tackett was talking about at which these events took place was the Westview residence..." (Doc. #4, Exh. 1 at ¶19), where Johnson was staying with her boyfriend (and Brown's lifelong friend) Marty Newberry. The Ohio Court of Appeals concluded, "In any event, it is not necessary that a suspect understand the very nature of every offense of which he is suspected or all possible subjects of questioning in order for his waiver of *Miranda* rights to be valid." (Doc. #4, Exh. 1 at ¶19). This did not constitute an unreasonable application of Supreme Court case law, particularly since the Court has explained, "Ploys to mislead a suspect or lull him into a false sense of security that do not rise to the level of compulsion or coercion to speak are not within *Miranda*'s concerns." *Illinois v. Perkins*, 496 U.S. 292, 297 (1990).

Accordingly, Brown's First Ground for Relief lacks merit.

## VI.    SUFFICIENCY OF EVIDENCE

Brown's Second Ground for Relief claims that the evidence presented during trial was insufficient to support his conviction of intimidating a crime victim or witness, namely, Jennifer Johnson. He explains, "Jennifer Johnson clearly testified that she had no intention of being a witness against Marty Newberry..... If Ms. Johnson was not a witness then it only stands to

10

reason there could be no intimidation of a witness.... What the State Court [of Appeals] failed to[5]

recognize was that if Ms. Johnson was not a witness then a critical element required to convict

on a violation of [Ohio Rev. Code] §2921.04 was not present and therefore a violation of same

could never occur."  (Doc. #5 at p. 5).

Applying the AEDPA, Respondent contends that the Ohio Court of Appeals' rejection of

Brown's challenge to the sufficiency of the evidence was not contrary to and did not involve an

unreasonable application of federal law.

Because the AEDPA applies to Brown's sufficiency claim, the Ohio Court of Appeals'

decision must be reviewed to determine if it was "contrary to" or involved an "unreasonable

application of *Jackson v. Virginia*, 443 U.S. 307 (1979).  *See, e.g., Biros v. Bagley*, 422 F.3d

379, 392 (6th Cir. 2005).

The Court in *Jackson* applied the Due Process Clause of the Fourteenth Amendment to

require each criminal conviction to be based upon proof beyond a reasonable doubt of every fact

necessary to constitute the particular crime at issue.  443 U.S. at 319; *see Fiore v. White,* 531

U.S. 225, 228-29 (2001).

> A habeas court reviews claims that the evidence at trial was insufficient
> for a conviction by asking whether, after viewing the evidence in the light most
> favorable to the prosecution, any rational trier of fact could have found the
> essential elements of the crime beyond a reasonable doubt....  A reviewing court
> does not reweigh the evidence or redetermine the credibility of the witnesses
> whose demeanor has been observed by the trial court....

*Matthews v. Abramajtys*, 319 F.3d 780, 788-89 (6th Cir. 2003) (citing, parenthetically, *Jackson v.*

*Virginia,* 443 U.S. at 319)(other citation omitted).  *Jackson* thus reserves to the trier of fact the

_____

[5]  Brown does not claim that the evidence was insufficient to support his other convictions.  *See* Doc. #1
(Second Ground for Relief); Doc. #5 at p. 4.

11

responsibility to weigh the evidence, to resolve conflicts in testimony, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 318-19; *see Neal v. Morris*, 972 F.2d 675, 678 (6th Cir. 1992). Circumstantial evidence can be sufficient to support a conviction and does not have to remove every reasonable hypothesis except that of guilt. *See Jackson*, 443 U.S. at 318-19, 326; *see also Walker v. Russell*, 57 F.3d 472, 475 (6th Cir. 1995).

"The *Jackson* standard must be applied 'with explicit reference to the substantive elements of the criminal offense as defined by state law.'" *Brown v. Palmer*, 441 F.3d 347, 351 (6th Cir. 2006)(quoting in part *Jackson,* 443 U.S. at 324, n.16).

The Ohio Court of Appeals correctly set forth *Jackson*'s standards. (Doc. #4, Exh. 1 at ¶s 23-24, 29). Although the Court of Appeals derived these standards from *State v. Jenks*, 61 Ohio St.3d 259 (1991), the Ohio Supreme Court in *Jenks* identified and applied the *Jackson* standards to a claim of insufficient evidence. *Id.* at 259-60, 273-80. Consequently, the Ohio Court of Appeals' decision was not diametrically opposed or "contrary to" *Jackson*. *See Nields*, 482 F.3d 442, ___

The remaining AEDPA-driven issue then is whether the Ohio Court of Appeals' application of *Jackson* was objectively unreasonable, not simply erroneous or incorrect. *See Williams*, 529 U.S. at 409-11; *see also Nields*, 482 F.3d 442, ___.

Ohio law defines the crime at issue, intimidation of attorney, victim or witness in a criminal case, as follows:

> No person, knowingly and by force or unlawful threat of harm to any person or property, shall attempt to influence, intimidate, or hinder the victim of a crime in the filing or prosecution of criminal charges or an attorney or witness involved in a criminal action or proceeding in the discharge of the duties of the attorney or witness.

12

Ohio Rev. Code §2921.04(B).  *See* Doc. #4, 1 at ¶26; Exh. 2; Exh. 5.

The Ohio Court of Appeals rejected Brown's claim because the evidence did not show that when he acted against Johnson, Brown did not know about her intention not to pursue her domestic violence charge against Marty Newberry.  (Doc. #4, Exh. 1 at ¶28).  The Ohio Court of Appeals also found the trial evidence sufficient to show that Brown entered Johnson's bedroom, "struck Johnson in the face with a metal pipe, and then for the next two hours prevented Johnson from leaving while continually threatening to harm her or kill her if she followed through with the charges against Newberry."  *Id*. at ¶28.  Brown's statements to Johnson, according to the Ohio Court of Appeals, "clearly demonstrate that his purpose was to discourage Johnson from being involved in any criminal proceeding against Newberry."  *Id*. at ¶28.

The Ohio Court of Appeals' decision was not an objectively unreasonable application of *Jackson* to Brown's intimidation conviction.  The Ohio Court of Appeals correctly framed the *Jackson* issue as whether, construing the evidence in the prosecution's favor, a rational jury could conclude that Brown knowingly threatened Johnson with the purpose of hindering or intimidating her pursuit of a domestic violence complaint against Newberry.  *See Jackson*, 443 U.S. at 319; *see also* Ohio Rev. Code §2921.04(B).  In light of this issue, Brown's focus on what Johnson actually intended to do on the day he attacked and threatened her does not eliminate the evidence supporting the conclusion that he knowingly us force and threats against Johnson for the purpose of hindering or intimidating her pursuit of a criminal complaint against Newberry.

The only trial evidence Brown points to is Johnson's testimony that she had decided not to pursue the charges against Newberry the day before Brown attacked her.  *See* Trial Tr. at p.

13

176 (Doc. #4, Exh. 28).[6]  Brown does not point to any evidence indicating that when he attacked Johnson, he knew she did not intend to pursue her criminal complaint against Newberry.  *See* Doc. #1 (Ground two); Doc. #5 at p. 5.  Even if Johnson had communicated this intention to Brown at the time he attacked and threatened her, this would not have changed the purpose of his attack – to intimidate or hinder Johnson in pursuing a criminal complaint – or his knowing use of violence and threats of violence to accomplish his purpose.  Based on Johnson's trial testimony about the attack and Brown's conduct and comments during the nearly two hours that followed the attack, a rational jury could conclude that Brown acted with this state of mind for this purpose in violation of Ohio Rev. Code §2921.04(B).  *See* Trial Tr. at pp. 135-36, 146, 148-49, 185-86.

Lastly, Brown's argument mis-frames the issue as follows – *i.e.*, whether Johnson's change of mind, and hence her non-complaining witness status at the time of the attack, precluded the finding that he intimidated a "complaining witness" in violation of §2921.04(B). Two related problems exists with Brown's argument.  First, it focuses on Johnson's state of mind, rather than Brown's knowledge and purpose in attacking Johnson.  Second, it overlooks evidence sufficient to show that Brown did not know Johnson had changed her mind about pursuing her criminal complaint against Newberry.  Concerning these problems, the Ohio Court of Appeals concluded, "The evidence presented at trial does not demonstrate that at the time [Brown] committed this offense he was aware of Johnson's intention not to pursue the domestic violence complaint she had made against Newberry."  (Doc. #4, Exh. 1 at ¶28).  The Ohio Court

---

[6]  Brown cites to page 186 of the trial transcript.  (Doc. #5 at p. 5).  This is likely a typographic error, since the testimony supporting his argument appears on page 176.

of Appeals based this on its specific review of trial evidence, *see id*., which it viewed in the

prosecution's favor as required by *Jackson*, 443 U.S. at 318-19.  Since Johnson's testimony by

itself, if credited, fully supported the Ohio Court of Appeals' analysis, its rejection of Brown's

contention did not involve an unreasonable application of *Jackson*.

Accordingly, Brown's Second Ground for Relief lacks merit.


**VII.    INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL**

**A.    <u>Applicable Standards</u>**

Brown's claims in his Fourth and Sixth Grounds for Relief that his trial counsel provided

ineffective assistance by not moving for acquittal at the close of the prosecution's case and by

not calling certain non-family alibi witnesses.

To establish constitutionally ineffective assistance of counsel ("IAC"), a criminal

defendant must show that his trial counsel's acts, errors, or omissions fell below an objective

standard of reasonableness.  *Strickland v. Washington,* 466 U.S. 668, 687-88 (1984).  This

demanding standard requires a defendant to establish that (1) his counsel provided deficient

performance and (2) this deficient performance prejudiced his defense so as to render his trial

fundamentally unfair and the result unreliable.  *Strickland*, 466 U.S. at 687.

The first *Strickland* prong mandates a highly deferential review of trial counsel's

performance.  *Id*. at 689.  "[A] court must engage in the strong presumption that counsel's

conduct falls within the wide range of reasonable professional assistance...."  *Id*. at 689.  When

trial counsel's acts or omissions constituted trial strategy, his or her performance was not

constitutionally deficient.  *Id*.  The second *Strickland* prong requires that trial counsel's "errors

were so serious as to deprive ... [him] of a fair trial, a trial whose result is reliable."  *Broom v.*

*Mitchell*, 441 F.3d 392, 408 (6th Cir. 2006) (citing *Strickland*, 466 U.S. at 687).

Because the AEDPA precludes a *de novo* review of constitutional claims, *see Price*, 538 U.S. at 639, Brown carries a heavy burden:

> The Supreme Court has made clear that post-AEDPA claims of ineffective assistance of counsel brought by habeas petitioners will succeed only in very limited circumstances....  For [the petitioner] to succeed..., he must do more than show that he would have satisfied *Strickland*'s test if his claim were being analyzed in the first instance, because under §2254(d)(1), it is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied *Strickland* incorrectly.  Rather, he must show that the ... [state] Court of Appeals applied *Strickland* to the facts of his case in an objectively unreasonable manner.

*Payne v. Bell*, 418 F.3d 644, 665 (6th Cir. 2005).

The Ohio Court of Appeals rejected Brown's IAC claims both on his direct appeal and in his post-conviction proceedings.  In each decision, the Ohio Court of Appeals set forth the correct standards of law under *Strickland*.  (Doc. #4, Exh. 1 at ¶s 43-46; Exh. 23 at ¶22).  These decisions were therefore not diametrically opposed or "contrary to" *Strickland*.  *See Nields*, 482 F.3d 442, ___

The remaining AEDPA inquiry concerns whether the Ohio Court of Appeals unreasonably applied *Strickland*'s legal standards to Brown's IAC claims.  *See Payne,* 481 F.3d at 665; *see also Hill v. Mitchell*, 400 F.3d 308, 323-24 (6th Cir. 2005).

### B.  <u>Discussion</u>

Brown claims in his Fourth Ground for Relief that his trial counsel provided ineffective assistance by failing to move for acquittal under Ohio R. Crim. P. 29 at the close of the prosecution's case.  Brown argues such a motion could have, and probably would have, resulted in a directed verdict in his favor resulting in the dismissal of all charges against him.  Brown

16

reasons that the evidence was insufficient because Jennifer Johnson's testimony was not credible "as is apparent from the record."  (Doc. #5 at p. 6).

The Ohio Court of Appeals found that defense counsel's decision not to move for acquittal did not constitute deficient performance because there was no reasonable possibility the Motion would succeed.  This was so, the Court of Appeals explained, because Jennifer Johnson's testimony was sufficient to support Brown's convictions.  As far as the felonious assault and kidnapping convictions, the Ohio Court of Appeals again described Jennifer Johnson's testimony about Brown's attack and threats upon her, and how he forced her to remain in the bedroom for nearly two hours.  (Doc. #4, Exh. 1 at ¶s 48-49).  In addition, having previously found the evidence sufficient to support Brown's conviction for intimidating a crime victim or witness, the Ohio Court of Appeals found virtually no reasonable chance of success in a potential motion for acquittal of this charge.  *Id*. at ¶ 50.

Brown's IAC claim lacks merit because the Ohio Court of Appeals' reasonably applied *Strickland*'s performance prong to conclude that defense counsel was not deficient in failing to move for Brown's acquittal at the close of the prosecution's case.  The Court of Appeals' supported its application of *Strickland* with a well-reasoned analysis of the evidence and with specific references to the pertinent Ohio statutes concerning felonious assault kidnapping, and intimidating a crime witness or victim.  Brown's contention that Johnson's testimony was not credible when the record "as a whole" is considered lacks merit because it fails to demonstrate unreasonableness in the Ohio Court of Appeals' application of *Strickland* and fails to show any inherent lack of credibility in Johnson's testimony.  *Cf. James*, 470 F.3d at 643 (absent clear and convincing rebuttal evidence, presumption of correctness applies to state court factual findings).

17

It was also appropriate under both Ohio procedural law, *see* Ohio R. Crim. P. 29, and federal constitutional law, *see Jackson*, for the Ohio Court of Appeals to view Johnson's testimony in the light most favorable to the prosecution.  For all these reasons, the Ohio Court of Appeals' decision was consistent with, rather than an unreasonable application of, *Strickland*.  *See Payne*, 418 F.3d at 665.

Brown also claims that he was denied effective assistance of counsel because his trial counsel failed to call certain non-family alibi witnesses to establish Brown was not at Johnson's residence at the time and date alleged.  The Ohio Court of Appeals rejected this claim during Brown's post-conviction relief proceedings.  (Doc. #4, Exh. 23 at ¶s 22-31).  In doing so, the Court of Appeals recognized that, in general, a trial attorney's decision about which witnesses to call at trial is within the realm of trial strategy, which will not be second guessed.  *Id*. at ¶30.  This was not an unreasonable application of *Strickland*, which requires only a "fair assessment of attorney performance...," 466 U.S. 689, and which mandates that courts considering IAC claims make "every effort ... to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.  Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance....'"  *Strickland,* 466 U.S. at 689.

The reasonableness of defense counsel's decision not to call non-family alibi witnesses is established by defense counsel's affidavit.  Counsel explains, "after talking with the Defendant's family members, I learned that certain witnesses, being employees of his family, did not want to get involved in the case and remembered facts different than [Brown] alleged."  (Doc. #4, Exh.

23 at ¶27 (emphasis added)). Because of this, the decision not to call the non-family alibi witnesses constituted a well-reasoned strategic decision, particularly since defense counsel was concerned that they would assist the prosecution's case, rather than Brown's defense. *See id.* The Ohio Court of Appeals' similar conclusion was therefore both supported by the record and consistent with the strong presumption of validity due such decisions under *Strickland,* 466 U.S. at 689.

Accordingly, Brown's Fourth and Sixth Grounds for Relief lack merit.

## VIII. REMAINING CLAIMS

### A. Manifest Weight of the Evidence

Brown asserts in his Third Ground for Relief his convictions were against the manifest weight of the evidence. Respondent correctly contends that such claims are not cognizable in federal habeas cases.

Under Ohio law, a broader test applies to claims challenging the manifest weight of the evidence compared to the test applicable to sufficiency-of-evidence claims under the Fourteenth Amendment. *See State v. Thompkins*, 78 Ohio St.3d 380, 387-88 (1997), *superceded in part by state constitutional amendment*, *State v. Smith*, 80 Ohio St.3d 89 (1997); *see also State v. Martin*, 20 Ohio App.3d 172 (1983); *State v. Thompson*, 127 Ohio App.3d 511 (1998); *cf. Tibbs v. Florida*, 457 U.S. 31, 42-43 (1982).[7] The distinction was thoroughly discussed in *Echols v. Houck*, 2005 WL 1745475 at *3 (S.D. Ohio, July 25, 2005) as follows:

> In essence, sufficiency, which implicates due process concerns, tests the

---

[7] For an example of the many recent unpublished Ohio cases recognizing this distinction see *State v. Braxton*, 2006 WL 1644268 at *2-*3 (Ohio Ct. App., June 15, 2006).

adequacy of the evidence in proving the essential elements of the offense charged and presents a question of law, which may not be resolved by the reviewing court through weighing the evidence. In contrast, in determining whether reversal is warranted based on the weight of the evidence, the appellate court sits as a 'thirteenth juror' to assess the jury's resolution of conflicting testimony upon review of the entire record, which includes weighing the evidence and all reasonable inferences and considering the credibility of witnesses. *Thompkins*, 678 N.E.2d at 546-47; *see also Tibbs*, 457 U.S. at 41-42; *Martin*, 485 N.E.2d 720-21.

As the Supreme Court explained in *Tibbs*, 457 U.S. at 43, unlike a reversal on the ground of insufficient evidence, a reversal based on the weight of the evidence 'does not mean that acquittal was the only proper verdict.' Rather, a reversal based on the weight of the evidence 'can occur only after the State both has presented sufficient evidence to support a conviction and has persuaded the jury to convict. The reversal simply affords the defendant a second opportunity to seek a favorable judgment. *Id*. at 42-43.

A federal court may review a state prisoner's habeas corpus petition only on the ground that the challenged confinement violates the Constitution, law, or treaties of the United States, 28 U.S.C. §2254(a). A federal court may not issue a writ of habeas corpus 'on the basis of a perceived error of state law.' *Pulley v. Harris*, 465 U.S. 37, 41 ... (1984); *Smith v. Sowders*, 848 F.2d 735, 738 (6th Cir.), *cert. denied*, 488 U.S. 866 ... (1988).

This discussion led the District Court in *Echols* to dismiss the petitioner's claim that his conviction was against the manifest weight of the evidence as not implicating a federal constitutional concern but instead only raised an issue of state law that was not cognizable upon federal habeas review. *Id*. The same reasoning, cases, and result apply to Brown's claim that his convictions were against the manifest weight of the evidence. *See id*. (and cases cited therein).

Accordingly, Brown's Third Ground for Relief is not cognizable in this federal habeas case. *See Tibbs*, 457 U.S. at 42-43; *see also Echols,* 2005 WL 1745475 at *3.

### B.    **Brown's Fifth Ground for Relief**

Brown's claims that the trial court erred by convicting and sentencing him for two allied

offenses, felonious assault and kidnapping. Respondent argues that this claim is waived due to Brown's procedural default in not raising it in the Ohio Supreme Court. In response, Brown – to his credit – concedes, "[this] claim was not presented to the state's highest court on direct appeal and therefore is subject to dismissal." (Doc. #5 at p. 3). The parties are correct that the failure to raise this claim in the Ohio Supreme Court constitutes a procedural default barring review in this federal habeas case. *See Buell v. Mitchell*, 274 F.3d 337, 349 (6th Cir. 2001); *see also Leroy v. Marshall*, 757 F.2d 94, 100 (6th Cir. 1985).

### C.  <u>Brown's Seventh and Eight Grounds for Relief</u>

Brown contends in his final two claims that the trial court erred during his post-conviction proceedings by failing to conduct an evidentiary hearing and by granting the State of Ohio's Motion for Summary Judgment. (Doc. #1; Doc. #5 at pp. 8-9). Claims related to such flaws in state-court post-conviction proceedings are not cognizable in federal habeas corpus. *See Cress v. Palmer*, 484 F.3d 844, 853 (6th Cir. 2007) (and cases cited therein).

## IX.  CERTIFICATE OF APPEALABILITY

Before Brown may appeal a denial of his habeas petition, he must first obtain a certificate of appealability. 28 U.S.C. §2253(c)(1)(A).

To obtain a certificate of appealability when a habeas petition is denied on the merits, the petitioner must make a substantial showing of the denial of a constitutional right. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). This is accomplished by showing that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further. *Slack*, 529 U.S. at

484 (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 (1983)).

If the District Court dismisses the petition on procedural grounds without reaching the merits of the constitutional claims, the petitioner must show that jurists of reason would find it debatable whether the District Court is correct in its procedural ruling. *Slack*, 529 U.S. at 484. The procedural issue should be decided first so as to avoid unnecessary constitutional rulings. *Slack*, 529 U.S. at 485 (citing *Ashwander v. TVA*, 297 U.S. 288, 347 (1936)(Brandeis, J., concurring)).

For the reasons stated throughout this Report, each of Brown's claims fail to make a substantial showing of a denial of his constitutional rights. In addition, the conclusions that his First, Second, Fourth and Sixth Grounds for Relief lack merit, and that his Third, Seventh, and Eighth claims are not cognizable upon federal habeas review, are not debatable among reasonable jurists. The conclusion that his Fifth Ground for Relief is waived due to procedural default, a conclusion with which Brown agrees, is not debatable among reasonable jurists. Brown's habeas Petition, his contentions, and the record as a whole do not otherwise present issues adequate to deserve encouragement to proceed further. Consequently, a certificate of appealability should not issue.

## IT IS THEREFORE RECOMMENDED THAT:

1.  Joe Stanley Brown's Petition for a Writ of Habeas Corpus (Doc. #1) be DENIED;

2.  A certificate of appealability under 28 U.S.C. §2253(c) not issue; and

3.  The case be terminated on the docket of this Court.

June 27, 2007                                        s/Sharon L. Ovington
                                                   Sharon L. Ovington
                                           United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(e), this period is extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by mail.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within ten days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See United States v. Walters*, 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).